**UNITED STATES of America,**
**Appellant,**

v.

**Carlos T. SINGLETON, Appellee.**

**No. 99–3053.**

United States Court of Appeals,
District of Columbia Circuit.

Argued June 3, 1999.

Decided June 25, 1999.

Barbara A. Grewe, Assistant U.S. Attorney, argued the cause for appellant. With her on the memorandum and reply were Wilma A. Lewis, U.S. Attorney, John R. Fisher, Thomas J. Tourish, Jr., and John Crabb, Jr., Assistant U.S. Attorneys.

L. Barrett Boss, Assistant Federal Public Defender, argued the cause as amicus curiae on behalf of appellee. With him on the memorandum were A. J. Kramer, Federal Public Defender, and Neil H. Jaffee, Assistant Federal Public Defender.

Billy L. Ponds, counsel for appellee, adopted the memorandum of amicus curiae.

Before: SENTELLE, ROGERS and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

The United States appeals from a district court order concluding that convicted felons who possess firearms in violation of 18 U.S.C. § 922(g) (1994) have not by that act alone committed a crime of violence warranting pretrial detention. We affirm, holding that the plain meaning of the Bail Reform Act excludes felon-in-possession offenses from the category of violent crimes that trigger detention hearings.

## I.

A one count indictment charges appellee Carlos Singleton with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g).[1] After a hearing, a magistrate ordered Singleton detained pending trial because he was charged with a crime of violence, see 18 U.S.C. § 3142(f)(1)(A), and factors enumerated in 18 U.S.C. § 3142(g) warranted detention rather than conditional release. Relying on its previous decision in *United States v. Gloster*, 969 F.Supp. 92, 94–96 (D.D.C.1997), the district court concluded that a felon-in-possession offense under § 922(g) is not a crime of violence authorizing pretrial detention, and therefore conditionally released Singleton pending trial. The United States sought an emergency stay of the

order in this court, which the court denied. This appeal followed. *See* 18 U.S.C. §§ 3145(c), 3731.

■ Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., a person awaiting trial on a federal offense may either be released on personal recognizance or bond, conditionally released, or detained. *See* 18 U.S.C. § 3142(a). The Act establishes procedures for each form of release, as well as for temporary and pretrial detention. Detention until trial is relatively difficult to impose. First, a judicial officer must find one of six circumstances triggering a detention hearing. *See* 18 U.S.C. § 3142(f). Absent one of these circumstances, detention is not an option. *See, e.g., United States v. Ploof*, 851 F.2d 7, 11 (1st Cir.1988). Second, assuming a hearing is appropriate, the judicial officer must consider several enumerated factors to determine whether conditions short of detention will "reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(g). The judicial officer may order detention if these factors weigh against release.

The § 3142(g) factors are not at issue in the instant appeal, and only one of the triggering circumstances is relevant. Specifically, the government contends, and Singleton disputes, that a felon-in-possession charge under § 922(g) alleges a "crime of violence," which under § 3142(f)(1)(A) triggers a detention hearing.[2]

1. Section 922(g) provides in relevant part:
 It shall be unlawful for any person ... who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... to ... possess in or affecting interstate commerce, any firearm or ammunition.
 18 U.S.C. § 922(g).

2. Section 3142(f) provides in part that:
 The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of the person as required and the safety of any other person and the com-

munity—(1) upon motion of the attorney for the Government, in a case that involves— (A) a crime of violence; (B) an offense for which the maximum sentence is life imprisonment or death; (C) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or the Maritime Drug Law Enforcement Act (46 U.S.C.App. 1901 et seq.); or (D) any felony if the person has been convicted of two or more offenses described [in clauses A–C], or two or more State or local offenses that would have been offenses described [in

Congress has defined "crime of violence" in the Bail Reform Act in three parts, as follows:

the term "crime of violence" means—

(A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another;

(B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense; or

(C) any felony under chapter 109A [18 U.S.C.A. § 2241 et seq.], 110 [18 U.S.C.A. § 2251 et seq.], or 117 [18 U.S.C.A. § 2421 et seq.].

18 U.S.C. § 3156(a)(4). Subpart C is irrelevant here, as is subpart A because, as the government concedes, use of a firearm is not an element of § 922(g), which encompasses mere possession. *Compare* 18 U.S.C. § 924(c)(1)(A); *Bailey v. United States*, 516 U.S. 137, 143, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). The open question is whether the "nature" of an offense under § 922(g) is such that a "substantial risk" of violence arises "in the course of committing the offense." We first address a threshold issue regarding the methodology for reaching the conclusion that triggers a detention hearing, and then turn to the government's contention that a felon-in-possession charge under § 922(g) is categorically a crime of violence within the meaning of § 3142(f).

## II.

The threshold issue is whether the Bail Reform Act requires courts to identify crimes of violence on a categorical or case-by-case basis. The government, while expressing a preference for the categorical approach, suggests that the court may also review the specific facts of each § 922(g) charge to determine whether a particular defendant has committed the offense in a violent manner warranting detention. By contrast, amicus (the Federal Public Defender) joined by Singleton, maintains that the statute contemplates a categorical rule that would treat all felon-in-possession offenses alike, and label them "crimes of violence" only if the offense by its general nature satisfies § 3142(f).

The weight of authority endorses a categorical approach. With one exception,[3] published district court opinions expressly considering the choice between a categorical and case-by-case approach to defining crimes of violence under § 3142(f) have opted for the categorical rule. *See, e.g., United States v. Carter*, 996 F.Supp. 260, 261–62 (W.D.N.Y.1998); *United States v. Gloster*, 969 F.Supp. 92, 94 (D.D.C.1997); *United States v. Washington*, 907 F.Supp. 476, 484 (D.D.C.1995); *United States v. Aiken*, 775 F.Supp. 855, 856 (D.Md.1991); *United States v. Marzullo*, 780 F.Supp. 658, 662 n. 8 (W.D.Mo.1991); *United States v. Phillips*, 732 F.Supp. 255, 261 (D.Mass.1990); *United States v. Johnson*, 704 F.Supp. 1398, 1400 (E.D.Mich.1988). Although no court of appeals has expressly addressed this question in the context of § 3142(f),[4] all three circuits reviewing the

clauses A–C] if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; or (2) Upon motion of the attorney for the Government or upon the judicial officer's own motion, in a case that involves—(A) a serious risk that the person will flee; or (B) a serious risk that the person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror. The hearing shall be held immediately upon the person's first appearance before the ju-

dicial officer.... Except for good cause, a continuance on motion of ... the attorney for the Government may not exceed three days (not including any intermediate Saturday, Sunday, or legal holiday).

3. The exception is *United States v. Epps*, 987 F.Supp. 22 (D.D.C.1997), which relied on a flawed description of pretrial detention procedures, as discussed below.

4. *But cf. United States v. Byrd*, 969 F.2d 106, 110 (5th Cir.1992) (per curiam) (reviewing

identical definition of crimes of violence in 18 U.S.C. § 16 (1994), outside the sentencing context,[5] have also applied a categorical approach. *See United States v. Baker,* 10 F.3d 1374, 1394 (9th Cir.1993); *United States v. Aragon,* 983 F.2d 1306, 1312–13 (4th Cir.1993); *United States v. Cruz,* 805 F.2d 1464, 1469–70 (11th Cir.1986); *see also United States v. Moore,* 38 F.3d 977, 979 (8th Cir.1994) (applying categorical approach to "crime of violence" definition in 18 U.S.C. § 924(c)(3)). *Cf. Taylor v. United States,* 495 U.S. 575, 600–01, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990).

▇ Weight of authority aside, we conclude from the plain meaning of § 3156 that a categorical approach is required. Each of the three prongs of the statutory definition identify a fixed category of offenses that does not expand or contract based on the factual peculiarities of a particular case. Section 3156(a)(4)(A) applies only to offenses that have "as an element of the offense" aspects of physical force. The term of art "element of the offense" makes clear that a court need look no further than the statute creating the offense to decide whether it describes a crime of violence. Likewise, § 3156(a)(4)(C) applies only to three specifically enumerated statutes, and requires no factual analysis.

Section 3156(a)(4)(B) is a bit more ambiguous than its neighbors, encompassing offenses that do not include violence as an element, but by their "nature" entail a substantial risk of violence. The word "nature" has no plain meaning standing on its own, and might therefore be amenable to conflicting interpretations. However, the word in context, *see generally Deal v. United States,* 508 U.S. 129, 132, 113 S.Ct. 1993, 124 L.Ed.2d 44 (1993), must be read with the preceding "its," which refers back to "offense," which in the preceding sentence refers to the statutory provision creating a crime rather than the factual incident constituting the crime. Unless the meaning of "offense" metamorphoses from one sentence to the next, which is implausible,[6] the use of the word "nature" refers to a legal charge rather than its factual predicate.

This conclusion is consistent with the language of § 3142(g)(1), which permits a judicial officer during a detention hearing to consider the "nature and circumstances of the offense charged" for the purpose of

the record to assess the nexus between an offense and an act of violence, but not expressly considering or acknowledging the distinction between categorical and case-by-case approaches to § 3142(f) findings).

**5.** Some courts have applied a case-by-case approach to interpreting United States Sentencing Guidelines § 4B1.2(a)(1), which defines "crime of violence" in the context of career offender enhancements in a similar fashion as 18 U.S.C. §§ 16 and 3156. *See, e.g., United States v. Chapple,* 942 F.2d 439, 440–42 (7th Cir.1991). We need not consider whether this approach is correct because the bail and sentencing provisions are materially different: § 3156 limits the range of predicate offenses to those that "by [their] nature" create a risk of violence, while the sentencing guidelines do not similarly limit review to the "nature" of an offense. *Cf. United States v. Velazquez–Overa,* 100 F.3d 418, 420–21 (5th Cir.1996) (stressing importance of the phrase "by its nature" in 18 U.S.C. § 16 as incorporated into U.S.S.G. § 2L1.2, for which the

court adopted a categorical approach). The apparently more expansive scope of the sentencing inquiry is consistent with the availability of a more extensive record after trial, which makes individualized findings more feasible than they would be immediately following arrest.

**6.** Two provisions of § 3156 define "offense," although the definitions are identical for present purposes. Subsection a(2) defines it in part as "any criminal offense ... in violation of an Act of Congress," while subsection b(2) defines it in part as "any Federal criminal offense." We read both to refer to criminal statutes, rather than a set of facts constituting a violation of a statute. Technically, these definitions apply only to 18 U.S.C. §§ 3141–50 and 3152–55, and thus do not control the use of "offense" elsewhere in § 3156. The definitions are nevertheless instructive because Congress is unlikely to have used a word in one paragraph in a manner that contradicts the definitions of the same word in the same section.

determining whether there are conditions of release that will reasonably assure the return of the person and the safety of others. The distinction between "nature" and "circumstances" clarifies that the former refers to the generic offense while the latter encompasses the manner in which the defendant committed it. Case-specific facts are thus relevant at a detention hearing, *see* § 3142(g), but not when considering the government's motion under § 3142(f)(1)(A) to hold such a hearing.

The alternative, case-by-case, approach would collapse the distinction between the holding that triggers a detention hearing and the factors relevant at the hearing, which are enumerated in § 3142(g). Section 3142(f) entitles defendants to a prompt detention hearing, either immediately at the defendant's first appearance before a judicial officer, or within days thereafter. In recognition of the fact that defendants remain incarcerated between the time the court determines a hearing is necessary and the time the hearing occurs, *see* § 3142(f), Congress strictly limited the availability of continuances. *See id.* Accordingly, detention hearings normally occur before either side has had an opportunity to develop its evidentiary case, and the court's capacity to reach accurate factual determinations is limited. The decision whether to hold a hearing occurs based on even less information than a decision to detain or release: a detention order is based on a hearing, while an order to hold a hearing is based on a proffer of what the hearing might establish. The single district court concluding that Congress contemplated a case-by-case approach overlooked this distinction, implying that reviewing the "nature" of an offense at the hearing could illuminate whether the hearing itself was appropriate. *See United States v. Epps,* 987 F.Supp. 22, 24–25 (D.D.C.1997). This two-tiered hearing-within-a-hearing procedure would protract detention analysis and erase the barrier that Congress constructed between sections 3142 (f) and (g). Thus, because adopting a case-by-case approach would blur two distinct statutory inquiries and would give more weight to fact-intensive analysis at an earlier stage of the case than Congress appears to have intended, we conclude that § 3142(f) contemplates that offenses eligible for pretrial detention hearings are ascertainable categorically by reference to their elements, either because these elements entail the use of violence, *see* § 3156(a)(4)(A), or the risk of violence, *see* § 3156(a)(4)(B).

At oral argument, the government offered two alternative formulations of the text; neither is persuasive. First, the government attaches significance to the fact that § 3142(f) applies to any "case" that "involves" a crime of violence. Whatever the meaning of "case" and "involves," they clearly apply to—rather than modify—the definition of "crime of violence" in § 3156, and that definition requires a categorical approach to identifying predicate offenses for pretrial detention. Second, the government notes that Congress could have made its intention clearer by including the word "charged" before "offense" in § 3156(a)(4)(B). For the reasons already noted, we conclude that the existing language is sufficiently plain to require the categorical approach; the possibility that the statute could have been even plainer does not mean by negative implication that Congress unambiguously expressed the opposite intent.

Accordingly, whether a felon-in-possession offense under § 922(g) is a crime of violence under § 3142(f) turns on a question of law to which the underlying facts of a particular case are irrelevant.

### III.

 Federal courts have divided over whether a felon-in-possession offense is a crime of violence warranting pretrial detention. To date, no court of appeals has issued a published opinion on the question. Two circuits, including this one, have summarily addressed the issue in unpublished

opinions that lack precedential force; a panel of this circuit concluded that § 922(g) is a crime of violence, while a panel of the Sixth Circuit disagreed. *See United States v. Floyd*, No. 98–3082, 1998 WL 700158 (D.C.Cir. Aug. 10, 1998); *United States v. Hardon*, No. 98–1625, 1998 WL 320945 (6th Cir. June 4, 1998) (citing *United States v. Gloster*, 969 F.Supp. 92, 95 (D.D.C.1997)).[7] Reported opinions of district courts also are in disagreement. This district and two other districts have split internally on the question,[8] while five districts form a majority characterizing § 922(g) as a crime of violence triggering a detention hearing.[9]

■ We begin with the plain meaning of the statute. *See generally Bailey*, 516 U.S. at 144–45, 116 S.Ct. 501. However, we do not write on a clean slate because the Supreme Court has already recognized that Congress limited pretrial detention of persons who are presumed innocent to a subset of defendants charged with crimes

that are "the most serious" compared to other federal offenses. *United States v. Salerno*, 481 U.S. 739, 747, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).[10] This construction is consistent with the Senate Report, which states that pretrial detention is necessary for only a "small but identifiable group of particularly dangerous defendants." *See* S.Rep. No. 98–225, at 6 (1984). That report clearly indicated that "the offenses set forth in subsection f(1) (A) through (C) [of § 3142] are ... essentially the same categories of offenses described in the District of Columbia Code" for purposes of preventive detention under local law, *id.* at 20–21, further suggesting that the general language of the federal statute does not embrace a large category of possession offenses that the more specific language of the D.C. statute excluded.[11] Interpretative uncertainty must be resolved in light of the foregoing understanding of Congressional intent.[12]

**7.** The unpublished order in *Floyd* does not bind this panel. *See* D.C. Circuit Rule 28(c); *Taylor v. Federal Deposit Ins. Corp.*, 132 F.3d 753, 761 (D.C.Cir.1997).

**8.** *Compare United States v. Robinson*, 27 F.Supp.2d 1116, 1118 (S.D.Ind.1998) (not a crime of violence), *United States v. Gloster*, 969 F.Supp. 92, 94–96 (D.D.C.1997) (same), *and United States v. Powell*, 813 F.Supp. 903, 907–08 (D.Mass.1992) (same) *with United States v. Sloan*, 820 F.Supp. 1133, 1140 (S.D.Ind.1993) (crime of violence), *United States v. Floyd*, 11 F.Supp.2d 39 (D.D.C.), *aff'd*, No. 98–3082, 1998 WL 700158 (D.C.Cir. Aug. 10 1998) (same), *United States v. Washington*, 907 F.Supp. 476, 485 (D.D.C.1995) (same), *and United States v. Phillips*, 732 F.Supp. 255, 263 (D.Mass.1990) (same).

**9.** *See United States v. Chappelle*, 51 F.Supp.2d 703 (E.D.Va.1999); *United States v. Campbell*, 28 F.Supp.2d 805, 808–10 (W.D.N.Y.1998); *United States v. Butler*, 165 F.R.D. 68, 72 (N.D.Ohio 1996); *United States v. Aiken*, 775 F.Supp. 855, 856–57 (D.Md.1991); *United States v. Johnson*, 704 F.Supp. 1398, 1403 (E.D.Mich.1988).

**10.** The Court's construction upholding the pretrial detention statute reflects a concern for the "importan[t] and fundamental nature" of the defendant's "strong interest in liberty,"

which may be subordinated only to "sufficiently weighty" government interests. *Salerno*, 481 U.S. at 750, 107 S.Ct. 2095.

**11.** Contrary to the government's statement at oral argument, the fact that firearms possession was not listed in the D.C. Bail Act as an offense triggering a detention hearing because it was not then a felony in the District of Columbia is irrelevant; what the legislative history indicates is that Congress wanted to incorporate the list of crimes that were then listed in the D.C. statute. In referencing the D.C. statute, the Senate Report cited D.C.Code §§ 23–1331(3) (defining "dangerous crime") & (4) (defining "crime of violence"), neither of which listed a purely possessory offense of any kind.

**12.** If the statute were ambiguous, the rule of lenity would require a narrow construction. *See, e.g., Bifulco v. United States*, 447 U.S. 381, 387, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980). The rule applies to penalty provisions in criminal statutes, *see id.*, and is appropriate in bail proceedings as well. *Cf. Reno v. Koray*, 515 U.S. 50, 64, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995). Given the Supreme Court's narrow interpretation of the pretrial detention provisions in *Salerno*, 481 U.S. at 747, 107 S.Ct. 2095, as well as our analysis of plain meaning, we have no occasion to apply the rule of lenity here.

The government's theory is that convicted felons who possess firearms are prone to violence, more so than non-felons who possess firearms, and would be inclined to use firearms during a violent incident. Because a "substantial risk" of violence is allegedly inherent in the possession of the gun—which can quickly escalate to use— the government maintains that a felon's mere possession of a firearm by its nature entails a substantial risk of violence.[13] This theory is laden with factual assumptions for which the government offers no empirical support, but the argument is overstated even if taken at face value because it ignores the limiting language in § 3156(a)(4)(B).

For a risk of violence to matter under § 3142, it must arise "in the course of committing the offense." 18 U.S.C. § 3156(a)(4)(B). The government construes "in the course of" as purely a temporal restraint, such that when commission of one offense correlates with and would occur contemporaneously with a second, more violent offense, then the violence of the latter offense may be deemed a "risk" of the associated non-violent offense. Thus, because a felon who possesses a firearm violates § 922(g) for the duration of possession, he would violate § 922(g) during any act of violence he may commit with the firearm, and thus these acts of violence would arise "in the course of" a § 922(g) offense. While nimble, this construction fails to respect the words and context of § 3156.

■ First, the nexus requirement in § 3156(a)(4)(B) is more than merely temporal because the phrase "in the course of committing" indicates that some aspect of

the charged offense must create the risk of violence in order to itself qualify as a crime of violence. Absent a direct relationship between the offense and a risk of violence, the possibility of violence is not a basis for pretrial detention on a charge that on its face does not involve violence as an element. The classic example of an offense evidencing such a direct relationship is burglary. *See, e.g., United States v. Chimurenga,* 760 F.2d 400, 404 (2d Cir. 1985); S.Rep. No. 98–225, at 307 (1984). The risk of violence in a burglary is not merely temporally coincident with the offense, but arises from the actions of the burglar in committing the crime itself, and the likely consequences that would ensue upon intervention of another person. This more precise relationship between charged conduct and future risk is necessary to satisfy § 3156(a)(4)(B).[14]

Second, the relationship between possession and use of a firearm is sufficiently attenuated that possession alone does not create a "substantial risk" of use. 18 U.S.C. § 3156(a)(4)(B). As then-Chief Judge Breyer explained in holding that felon-in-possession offenses are not violent felonies under § 924(e):

One can easily imagine a significant likelihood that physical harm will often accompany the very conduct that normally constitutes, say, burglary or arson. It is much harder, however, to imagine such a risk of physical harm often accompanying the conduct that normally constitutes firearm possession, for simple possession, even by a felon, takes place in a variety of ways (e.g., in a closet, in a storeroom, in a car, in a pocket) many,

---

**13.** The government also contends that violations of § 922(g) are crimes of violence because felons know that they may not possess firearms, and their decision to do so is therefore a "contemptuous" affront to the law performed in a potentially violent manner. We reject the premise of this argument, which taken to its logical conclusion converts impudence into a proxy for potential violence, and thus transforms most felonies into predicates for pretrial detention.

**14.** Taken literally, the government's temporal relationship theory suggests that obviously non-violent crimes such as felonious possession of burglar's tools could qualify as violent offenses because they often occur contemporaneously with a violent offense, such as burglary. *See, e.g.,* Va.Code Ann. § 18.2–94; 720 Ill. Comp. Stat. 5/19–2; Wyo. Stat. Ann. § 6–3–304.

perhaps most, of which do not involve likely accompanying violence. *United States v. Doe*, 960 F.2d 221, 224–25 (1st Cir.1992). While felons with guns may as a class be more likely than non-felons with guns or felons without guns to commit violent acts, nothing inherent in a § 922(g) offense creates a "substantial risk" of violence warranting pretrial detention.

Third, even if we accept that a substantial risk of violence arises merely because a potentially violent person possesses an instrumentality of violence, the government's theory would still be overbroad because not all felons are potentially more violent than non-felons. Numerous felonies involve economic crimes or regulatory offenses which, while serious, do not entail a substantial risk of physical force. *See, e.g.,* 18 U.S.C. §§ 153 (embezzlement against estate); 289 (false claims for pensions); 335 (circulation of obligations of expired corporations); 602 (solicitation of political contributions); 1025 (false pretenses on the high seas); 1341 (frauds and swindles); 1367 (interference with the operation of a satellite); 1728 (fraudulent increase in weight of mail); 1910 (nepotism in appointment of receiver or trustee). Section 3142(f) implicitly recognizes this fact because it does not authorize pretrial detention for such offenses. Thus, a person convicted of a non-violent crime does not become a candidate for pretrial detention merely by subsequently possessing a firearm, as such a person does not seem especially more likely to use the firearm in a violent manner. The government opposes this reasoning because § 922(g) does not distinguish between violent and non-violent felonies, reflecting Congressional recognition of the link between felons, guns, and crime. However, the policy considerations in favor of limiting felons' rights to possess firearms differ substantially from those in favor of pretrial detention of people who are presumed innocent. *See Salerno*, 481 U.S. at 750, 107 S.Ct. 2095 ("The Bail Reform Act ... narrowly

focuses on a particularly acute problem" and involves a "particularized governmental interest"). The distinction between violent and non-violent felonies is therefore meaningful in the context of § 3142(f)(1)(A) determinations even though the distinction is irrelevant in § 922(g) cases. *Cf. Old Chief v. United States*, 519 U.S. 172, 190–91, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997).

Fourth, interpreting § 3142(f)(1) to exclude felon-in-possession offenses does not deprive the government of an opportunity to detain armed felons when other circumstances warrant. For example, pretrial detention is permissible in § 922(g) cases if the defendant has two prior predicate felony convictions, *see* § 3142(f)(1)(D), is likely to flee, *see* § 3142(f)(2)(A), or is likely to obstruct justice, *see* § 3142(f)(2)(B). When none of these factors is present, however, the government cannot secure detention by squeezing § 922(g) into the "specific category of extremely serious" violent offenses covered by § 3142(f). *Salerno*, 481 U.S. at 750, 107 S.Ct. 2095.

Finally, the government maintains that legislative history of sections 3142 and 922(g) supports the general propositions that felons should not have guns and violent criminals should not obtain bail. However, none of the cited materials address the question under review, which is whether felons who possess firearms have thereby committed a crime of violence sufficient to warrant pretrial detention. *Cf. Doe*, 960 F.2d at 225–26. Given the plain statutory language, any ambiguous legislative history must yield to the words Congress used in the statute itself. *See, e.g., Salinas v. United States*, 522 U.S. 52, 118 S.Ct. 469, 474, 139 L.Ed.2d 352 (1997). Congress is of course free to amend § 3142, but this court is bound by the language that Congress has so far provided.

Our rejection of the government's interpretation is consistent with the treatment of "crimes of violence" at sentencing. First, under the Sentencing Guidelines,

certain "career offenders" may receive enhanced sentences based upon present and past "crime[s] of violence." U.S.S.G. § 4B1.1. The Guidelines define "crime of violence" as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). In an application note binding on federal courts, the Sentencing Commission has excluded felon-in-possession offenses from this definition. *See id.* § 4B1.2 application note 1; *Stinson v. United States,* 508 U.S. 36, 47, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). Amicus and Singleton reason that because § 4B1.2(a) parallels § 3156(a)(4), the court should read them consistently and exclude felon-in-possession offenses from the latter.

Of course, the Sentencing Commission's interpretation of § 4B1.2(a) is not binding here, both because the Commission lacks authority to interpret § 3156 and because its analysis is not "compelled" by § 4B1.2(a), but is merely a sufficiently plausible interpretation to warrant deference in sentencing cases. *Stinson,* 508 U.S. at 47, 113 S.Ct. 1913. Nevertheless, the overlap between bail and sentencing is striking, at least in the present context. At sentencing, a court has extensive information about a particular offense and the defendant has been found guilty of it. By contrast, before trial the judicial officer has few facts and the defendant is presumed innocent. Yet the purpose of review is similar in both instances because the court must parse violent from nonviolent defendants in applying the more

stringent incarceration requirements that Congress imposed on the former. Given that under § 4B1.2 a felon-in-possession charge is never a proxy for violence on a full record when guilt is established, it would be odd to conclude that it is categorically a proxy for violence on a thin record when the presumption of innocence applies. If there were to be a distinction between the two inquiries, it presumably would run in the opposite direction.

The same reasoning supports the analogy that amicus and Singleton draw to sentence enhancements under 18 U.S.C. § 924(e) for § 922(g) offenders who have committed three "violent felon[ies]." The term "violent felony" in § 924(e) is similar to the term "crime of violence" in § 4B1.2(a), *see* 18 U.S.C. § 924(e)(2)(B), and it too has been interpreted to exclude felon-in-possession offenses. *See United States v. Oliver,* 20 F.3d 415, 417–18 (11th Cir.1994); *Doe,* 960 F.2d at 223–26. *Cf. United States v. Garcia–Cruz,* 978 F.2d 537, 543 (9th Cir.1992).[15] If § 922(g) violations are not a predicate for lengthening the sentence of convicted armed recidivists, it would be incongruous to hold that the offense nevertheless warrants detention of merely accused armed recidivists. Each context requires the court to implement a congressional policy favoring incapacitation of violent offenders, and we see no reason to suppose that § 922(g) offenses trigger Congress's concern in the bail context but not in the sentencing context.

Accordingly, because we conclude that § 3156(a)(4)(B) makes clear that Congress did not include possession of a firearm by a felon within the category of offenses triggering the government's right to a detention hearing under § 3142(f)(1), we hold that Singleton has not been charged with a crime of violence warranting pretrial de-

---

**15.** *Accord Royce v. Hahn,* 151 F.3d 116, 124 (3d Cir.1998) (holding that felon-in-possession offense is not a crime of violence under 18

U.S.C. § 4042(b)(3)(B)); *United States v. Canon,* 993 F.2d 1439, 1441 (9th Cir.1993) (interpreting 18 U.S.C. § 924(c)).

tention, and we therefore affirm the order of the district court.