UNITED STATES of America

v.

Asher KARNI,

No. 03–707(TFH/JMF).

United States District Court,
District of Columbia.

Jan. 28, 2004.

*MEMORANDUM OPINION*

THOMAS F. HOGAN, Chief Judge.

## I. INTRODUCTION

Pending before the Court is the Government's Motion for Revocation of Release Order and Memorandum in Support of Detention ("Gov. Mot."), filed January 14, 2004. After careful consideration of that motion, the oral argument heard in open court at the hearing held on January 20, 2004, and the entire record herein, the Court will deny the motion and will allow the ruling releasing Defendant to stand with modifications.

## II. BACKGROUND [1]

Defendant Asher Karni is charged in a criminal complaint issued from the District of Columbia alleging that he violated the Export Administration Act ("EAA") and the International Economic Emergency Powers Act ("IEEPA"), 50 U.S.C.App. § 2410(b)(1) and 50 U.S.C. § 1705(b), respectively. The complaint alleges that Defendant acquired products that are capable of triggering nuclear weapons and exported them to Pakistan, via South Africa, avoiding the requirement of obtaining an export license for the devices.

Mr. Karni was arrested on January 1, 2004 by BICE agents while going through Customs and Immigration at the Denver International Airport. Defendant had arrived in Colorado intending to stay at a ski resort at Keystone, Colorado with his wife and daughter until January 19, 2004. On January 2, 2004, Defendant had his initial appearance at the U.S. District Court for the District of Colorado in Denver. At that appearance, Mr. Karni requested an identity/detention hearing. That hearing took place on Wednesday, January 7, 2004, before Magistrate Judge Watanabe. On that day, Magistrate Judge Watanabe held that the government had established Mr. Karni's identity as the proper defendant and found that there was probable cause that Mr. Karni committed the alleged crime. The hearing was continued until January 12, 2004, to provide defense counsel an opportunity to submit evidence on the issue of detention. At the conclusion of that hearing, Judge Watanabe ordered that Karni be released on a bond of $75,000 offered by Bruce Rosenbaum and placed into the custody of Rabbi Yoseph Singer of Potomac, Maryland.

On January 14, 2004, the government submitted a motion for revocation of Magistrate Judge Watanabe's ruling releasing Defendant. This Court issued an order staying the release pending this Court's resolution of the issue. A hearing was held by this Court on January 20, 2004, during which Mr. Karni and defense counsel participated by video conference from the District of Colorado courthouse.

## III. DISCUSSION

### A. Bail Reform Act Standards

The Court notes at the outset that its review of the Magistrate's decision is *de novo*, and the Court is free to use in its analysis any evidence or a rationale different than what the Magistrate relied upon. *United States v. Hudspeth*, 143 F.Supp 2d 32, 35–36 (D.D.C.2001) (Kennedy, J.); *United States v. Bess*, 678 F.Supp. 929, 934 n. 3 (D.D.C.1988) (citing *United States v. Fortna*, 769 F.2d 243 (5th Cir.1985)).

Under the Bail Reform Act, 18 U.S.C. § 3141 *et seq.*, a person awaiting trial on a federal offense may either be released on personal recognizance or bond, conditionally released, or detained. 18 U.S.C. § 3142(a); *see United States v. Singleton*, 182 F.3d 7, 9 (D.C.Cir.1999). In this case the Government seeks Defendant's pretrial detention pursuant to section 3142(f)(2)(A), which permits the Court to order pretrial detention "in a case that involves ... a serious risk that such person will flee." 18 U.S.C. § 3142(f)(2)(A).

In determining whether there are conditions of release that will reasonably assure the appearance of the defendant as required and the safety of any other person and the community, the Court must con-

1. Unless otherwise indicated, the following background information was obtained from government's motion at 1–6.

duct a hearing at which it must consider the following factors:

(1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

 A finding that no condition or combination of conditions will reasonably assure the appearance of the defendant must be supported by a preponderance of the evidence, and a finding that no condition or combination of conditions will reasonably assure the safety of any other person and the community must be supported by clear and convincing evidence. *See* 18 U.S.C. § 3142(e); *United States v. Simpkins,* 826 F.2d 94, 96 (D.C.Cir.1987) ("While the [Bail Reform] Act requires that detention be supported by 'clear and convincing evidence' when the justification is the safety of the community ... it is silent as to the level of proof required to establish risk of flight. This circuit, however, has ruled that such a finding need only be supported by a 'preponderance of the evidence.'") (quoting *United States v. Vortis,* 785 F.2d 327, 329 (D.C.Cir.1986)); *see also United States v. Xulam,* 84 F.3d 441, 442 (D.C.Cir.1996) (per curiam). Furthermore, the government may present evidence in support of the criteria listed above by way of proffer. *United States v. Smith,* 79 F.3d 1208, 1210 (D.C.Cir.1996) (allowing Government proffer).

## B. Analysis

**(1) Nature and Circumstances of the Offense Charged, Including Whether the Offense Is a Crime of Violence or Involves a Narcotic Drug**

 The crime with which Defendant is charged is neither a crime of violence nor a crime involving narcotics. Special Agent David Poole from the U.S. Department of Commerce, Office of Export Enforcement, who testified on behalf of the government at the detention hearing on January 7, 2004, stated that the crime committed by Defendant was not a crime of violence. *See* Transcript of January 7, 2004 at page 37. Furthermore, in the government's revocation motion, it admits that "this case does not involve a crime of violence". *See* Gov't Mot. at 18.

**(2) Weight of the Evidence Against the Person**

Based on the Government's proffer of the evidence against Mr. Karni, this Court finds that the weight of the evidence against Defendant is substantial.

(3) **History and Characteristics of the Person, Including—**

(A) *Person's Character, Physical and Mental Condition, Family Ties, Employment, Financial Resources, Length of Residence in the Community, Community Ties, Past Conduct, History Relating to Drug or Alcohol Abuse, Criminal History, and Record Concerning Appearance at Court Proceedings.*

Mr. Karni has no known criminal history. *See* Transcript of January 7, 2004 at page 37. He also does not suffer from any known physical or mental impairments, nor are there any reports of a drug or alcohol abuse problems. *See* Pretrial Services Report dated January 14, 2004. Defendant, however, has no ties to the United States or to the Washington, D.C. area. Mr. Karni is an Israeli national who has resided in South Africa for the last 18 years. He currently lives in South Africa with his wife and one of his three children. *Id.* He owns a house in Cape Town, *see* Gov't Mot. at 17, and has abundant ties to the local community as demonstrated by the numerous letters of support sent on his behalf by individuals who live in or around Cape Town, South Africa.

Defendant also has ties to Israel and is a citizen of that nation. Two of his children currently reside there, and Mr. Karni lived in Israel from the time he was an infant until he was 29 years old. Additionally, he served in the Israeli Army from 1971 to 1985. *See* Pretrial Services Report dated January 14, 2004

What Mr. Karni is lacking, however, are ties to the United States. There has been no evidence presented establishing that Defendant has ever lived in this country, owned property here, or that he has any family or community ties in the United States. Defendant was only in this country in order to participate in a ski vacation with his wife and daughter. *See* Pretrial Services Report dated January 14, 2004.

(B) *Whether, at the Time of the Current Offense or Arrest, the Person Was on Probation, on Parole, or on Other Release Pending Trial, Sentencing, Appeal, or Completion of Sentence for an Offense under Federal, State, or Local Law.*

Defendant has no criminal history prior to this arrest, and therefore was not on any type of parole or probationary status at the time of his arrest.

(4) **Nature and Seriousness of the Danger to Any Person or the Community That Would Be Posed by the Person's Release.**

Mr. Karni is not charged with a crime of violence. Defendant has no known criminal history, and there is no evidence whatsoever linking Mr. Karni with any violent crimes or weapons use. Rather, the Court has been presented with substantial evidence in the form of letters of support attesting to his non-violent nature. It is these letters, coupled with Defendant's lack of criminal history and the non-violent nature of his current charge, which convinces the Court that the Washington, D.C. vicinity will be no more dangerous once Mr. Karni is released.

C. **Risk of Flight**

Due to the absence of connections tying Mr. Karni to this country, the Court recognizes that there is a risk that Defendant will flee this Court's jurisdiction. In order to ensure Defendant's continued presence in the D.C. area and to safeguard the government's ability to prosecute this individual, the Court holds that conditions of release above and beyond those outlined by Magistrate Judge Watanabe must be

met. Before Mr. Karni may be released on bond, the following conditions must be satisfied:

1) Defendant shall serve in home detention in the Electronic Monitoring Program. During the period of home detention, he shall remain at Hebrew Sheltering Home in Silver Spring, Maryland, except for employment or other activities approved in advance by the Pretrial office. During the term of electronic monitoring, he shall maintain a telephone at his place of residence without any special features, modems, answering machines, or cordless telephones. He shall wear an electronic device and pay for the electronic monitoring service.

2) Mr. Karni must sign a waiver of any rights not to be extradited to the United States that he has under Israeli and South African extradition treaties with the United States.

3) In addition to the $75,000 bond posted on Defendant's behalf by Bruce Rosenbaum, Mr. Karni must commit $100,000 of his own funds.

4) Defendant will be released into the custody of Rabbi Herzel Kranz, instead of Rabbi Yoseph Singer. As outlined in Defendant's Memorandum in Support of Release, Rabbi Kanz must commit to have someone with Defendant on a twenty-four hour basis, seven days a week.

These four requirements will become conditions precedent to Mr. Karni's release on bond, and they will be additional conditions of his order of release. All of the remaining conditions set forth in Magistrate Judge Watanabe's ruling releasing Defendant remain in effect.

1. Note that my previous order was dated December 18, 2003, and, thus, the show cause

## IV. CONCLUSION

For the foregoing reasons, the Court adopts Magistrate Judge Watanabe's ruling of January 12, 2004 releasing Mr. Karni on bond with the modifications outlined above. An appropriate Order will accompany this Memorandum Opinion.