UNITED STATES of America, Plaintiff

v.

Joseph Francis POWERS, Defendant

No. CIV.A. 704CR34.

United States District Court,
W.D. Virginia,
Roanoke Division.

April 16, 2004.

Ronald Andrew Bassford, United States Attorneys Office, Roanoke, VA, Counsel for Plaintiff.

Edward Scott Austin, Gentry Locke Rakes & Moore, Roanoke, VA, Counsel for Defendant.

## *MEMORANDUM OPINION*

URBANSKI, United States Magistrate Judge.

### *I. OVERVIEW*

Joseph Francis Powers, a convicted felon, is charged in a four count indictment for possessing at his residence in Union Hall, Virginia more than sixty (60) firearms, many lacking serial numbers, large quantities of ammunition and a package of military grade C–4 plastic explosives. Powers seeks pretrial release but, as yet, the court is left with nothing but questions as to the possession by a felon of such large quantities of firearms, ammunition and military grade explosives.

## II. PROCEDURAL AND FACTUAL BACKGROUND

At the hearing conducted on April 2, 2004, the question was raised whether it is appropriate to hold a detention hearing in this case given the nature of the charges in the criminal complaint. At the time of the hearing, Powers was charged in a criminal complaint with violations of 18 U.S.C. § 922(g), commonly known as the felon in possession statute, and 18 U.S.C. 842(i)(1), concerning unlawful possession of explosives.[1]

In 1976, Powers was convicted in the United States District Court for the Southern District of New York of two felonies concerning violations of the federal firearms laws: 1) a violation of the gun control act, and 2) possession of an unregistered weapon.

On March 15, 2004, a search warrant was issued to search Powers' residence in Union Hall, Virginia. Upon execution of the search warrant on March 16, 2004, five firearms were found in Powers home, and 56 firearms were found in a conex storage trailer on Powers' property. Many of these firearms bore no serial numbers. Also located in the conex storage trailer were some containers of ammunition and a block of C–4 military grade plastic explosive.

At Powers' initial appearance on March 17, 2004, the United States moved to detain Powers based largely on the danger to the community posed by the unexplained presence of large numbers of firearms and military grade plastic explosives. ATF Agent J.D. Underwood testified regarding execution of the search warrant and the location of and condition of the firearms, ammunition and military grade plastic explosives. Underwood testified that the search revealed no militia-type materials, but noted that papers were found concerning efforts by Powers to restore his ability to own and possess firearms.

Powers called no witnesses or presented any evidence at the initial appearance, but his counsel suggested that the firearms were in the nature of Powers' retirement investment, and that certain of the items in the container may have at one time belonged to Powers' father, who was reported to have had some sort of demolition or explosives experience. At the initial appearance, the United States indicated that it was investigating the origin of the C–4 military grade plastic explosives. The initial pretrial services report indicated that some conditions of release were possible, but the probation officer indicated that the report was prepared before he became aware of the large quantities of firearms, ammunition and C–4 military grade plastic explosives on Powers' premises.

Because of the unexplained presence of dozens of firearms, many without serial numbers, large containers of ammunition, and C–4 military grade plastic explosives at the residence of a convicted felon, the court detained Powers, finding that there were no conditions or combinations of conditions that would adequately assure that Powers would appear at trial or pose no danger to any other person or the community. A written detention order was entered on March 22, 2004.

At the subsequent April 2, 2004 bail review hearing requested by Powers, scant evidence was presented. Powers provided written information regarding his honorable discharge from the Army National Guard and Reserves in 1965 and regarding his claimed medical disability. For its

---

1. Subsequently, a four count indictment, charging violations of 18 U.S.C. § 922(g)(1), felon in possession, 26 U.S.C. § 5861(d), possession of unregistered firearms, 18 U.S.C. § 842(i)(1), felon in possession of explosives, and 18 U.S.C. § 841(o), possession of unreported plastic explosives, was issued on April 7, 2004.

part, the government reported that the C–4 military grade plastic explosives dated from the late 1970s and were last traced to a United States military installation. No information was provided as to how the C–4, manufactured for the exclusive use of the United States military, came into Powers' possession. At the April 2, 2004 hearing, Powers was given an opportunity to put on evidence regarding conditions of pretrial release, but Powers requested that he be allowed to put on such evidence at a date in the future.

Also at the April 2, 2004 hearing, at the court's request, oral argument was heard on the issue of whether a person charged under the felon in possession statute constitutes a crime of violence for the purposes of conducting a detention hearing under 18 U.S.C. § 3142(f). The court requested post argument briefs which were submitted on April 7, 2004.

### III. LEGAL ANALYSIS

#### A. *Statutory Bases for Holding Detention Hearings.*

Both the United States and Powers accurately recognize that under the Bail Reform Act of 1984 a detention hearing is authorized only under one of the six statutory bases set out in 18 U.S.C. § 3142(f). Absent application of one of these statutory bases for holding a detention hearing, pretrial detention is not warranted.

> Note that a case is not necessarily eligible for a detention hearing merely because defendant is generally a risk to other persons or to the community. The case must fit one of the six eligibility categories. "Congress did not intend to authorize preventive detention unless the judicial officer first finds that one of the § 3142(f) conditions for holding a detention hearing exists." *U.S. v. Ploof,* 851 F.2d 7, 11 (1st Cir.1988). *Accord U.S. v. Friedman,* 837 F.2d 48, 49 (2d

Cir.1988); *U.S. v. Byrd,* 969 F.2d 106 (5th Cir.1992).

Weinberg, *Federal Bail and Detention Handbook,* § 7.04, at 7–12 (PLI, Rel. No. 16, 2004).

After initially contending that a detention hearing may be held for any person posing a danger to the community, the United States now asserts that a detention hearing is appropriate in this case because a felon in possession is a crime of violence under 18 U.S.C. § 3142(f)(1)(A). Powers contends that detention is not appropriate because the crime charged is not a crime of violence, and thus there is no basis for a detention hearing under § 3142(f).

In fact, two prongs of § 3142(f) are in play as regards Powers. First, under § 3142(f)(1)(A), a detention hearing may be held if the crime charged is a crime of violence. Powers and the United States disagree as to whether the crimes charged fall within this category, and the court will address those arguments herein. Second, a detention hearing may be held if either the United States or the court believes there is a serious risk of flight. 18 U.S.C. § 3142(f)(2)(A). The detention order entered on March 22, 2004 expressly recognized that a risk of flight existed in this case. Powers has indicated that he intends to present evidence to rebut this finding at a hearing to be held in the future. A serious risk of flight always justifies the holding of a detention hearing, allowing both parties an opportunity to present evidence on the factors to be considered under § 3142(g). For this reason alone, a detention hearing is warranted in this case, and Powers will be given an opportunity to demonstrate that his pretrial release does not pose such a risk.

#### B. *Appropriateness of Detention Hearing Under § 3142(f)(1)(A).*

■ Certainly, the focus of the government's case is the danger to the communi-

ty posed by a felon in possession of large quantities of firearms, ammunition and C–4 military grade plastic explosives. The government now contends that a felon in possession charge categorically authorizes a detention hearing.

There is a split of authority on this issue. The Second Circuit has held that a felon in possession charge authorizes a detention hearing, *United States v. Dillard*, 214 F.3d 88 (2nd Cir.2000), while the D.C. Circuit, Seventh Circuit and Ninth Circuits do not. *See United States v. Singleton*, 182 F.3d 7 (D.C.Cir.1999); *United States v. Lane*, 252 F.3d 905 (7th Cir.2001); *United States v. Twine*, 344 F.3d 987 (9th Cir.2003). The court finds the reasoning and analysis of the Second Circuit in *Dillard* more persuasive than the *Singleton* line of cases. To follow the *Singleton* approach would not allow the court to hold a detention hearing "no matter how obviously dangerous or how bent on committing an act of violence or terrorism the felon in possession may be … unless some other statutory basis for detention can be found." *Dillard*, 214 F.3d at 96. The Second Circuit reasoned further as follows:

> We believe that had Congress explicitly focused on the issue it would have by far preferred the construction that subjects the felon illegally in possession to a detention hearing, following which he will be released if not found to be dangerous, than the construction that would mandate the release of all felons in possession regardless how clearly they endanger the community.

> Our consideration of the precise words of the Act, coupled with the legislative history to aid in the interpretation of ambiguous provisions, leads us to the conclusion that the crime of felon-in-possession under section 922(g)(1) falls within section 3156(a)(4)(B); "by its nature," the offense of illegal gun possession by a person previously convicted of

a felony offense (not including business-regulating offenses), "involves a substantial risk that physical force … may be used in the course of committing the offense." The vast majority of courts that have considered the question have agreed with this interpretation.

*Id.* at 97 (internal footnote citations omitted).

As the Second Circuit noted in *Dillard*, the majority of the district courts considering this issue have held that a felon in possession constitutes a crime of violence authorizing a detention hearing under § 3142(f)(1)(A). *United States v. Shirley*, 189 F.Supp.2d 966, 968–69 (W.D.Mo.2002), citing *United States v. Lee*, 156 F.Supp.2d 620 (E.D.La.2001); *United States v. Cruickshank*, 150 F.Supp.2d 1112 (D.Col. 2001); *United States v. Stratton*, 2001 WL 527442 (D.Ariz., April 24, 2001); *United States v. Connolly*, 1999 WL 1995186 (D.Conn., December 23, 1999); *United States v. Butler*, 165 F.R.D. 68 (N.D.Ohio 1996); *United States v. Sloan*, 820 F.Supp. 1133 (S.D.Ind.1993); *United States v. Johnson*, 704 F.Supp. 1398 (E.D.Mich. 1988); *United States v. Jones*, 651 F.Supp. 1309 (E.D.Mich.1987). *See also United States v. Spires*, 755 F.Supp. 890 (C.D.Cal. 1991); *United States v. Campbell*, 28 F.Supp.2d 805 (W.D.N.Y.1998). The court in *Shirley* addressed the split in the circuits as follows:

> As pointed out in the *Dillard* opinion, the *Singleton* reasoning is flawed. Among other obvious errors discussed at length by the court in *Dillard*, the *Singleton* court clearly undermines Congress' intent to make detention available for a broad category of potentially dangerous defendants, if determined at a hearing to be in fact dangerous. If, after a hearing, it is found that there are conditions of release that can reasonably protect the safety of the community,

conditions of release will be set. It is only those defendants who are found to be too dangerous for bond who are detained—and under the reasoning of *Singleton*, those dangerous criminal defendants must be released on bond. Public policy and common sense dictate otherwise.

189 F.Supp.2d at 969.

Moreover, all three of the district courts in the Fourth Circuit that have considered this issue have determined that a detention hearing is appropriate. *United States v. Chappelle*, 51 F.Supp.2d 703 (E.D.Va. 1999); *United States v. Spry*, 76 F.Supp.2d 719 (S.D.W.Va.1999); *United States v. Aiken*, 775 F.Supp. 855 (D.Md.1991).

▮ The court agrees with the Second Circuit's opinion in *Dillard* and the reasoning of the neighboring district courts in the *Chappelle*, *Spry* and *Aiken* decisions. Holding a detention hearing for persons charged under the felon in possession statute does not mean that convicted felons charged under this statute regularly or routinely will be detained. Indeed, simple possession for collecting, hunting or other legitimate purposes typically and appropriately will result in pretrial release. As the Second Circuit noted in *Dillard*, "the hunter, target shooter, or gun collector will presumably be released after the hearing, especially if his offense of conviction characteristically does not involve violence." 214 F.3d at 96. Holding a detention hearing merely permits the court "to peek behind the categorical treatment of the offense to determine whether conditions of release exist that will ensure the safety of the community." *United States v. Spry*, 76 F.Supp.2d at 721–22.

The district court in *Spry* took the approach of allowing a detention hearing cognizant of the fact that the Fourth Circuit in *United States v. Johnson*, 953 F.2d 110 (4th Cir.1991), has held that § 922(g) is not categorically a crime of violence for Sen-

tencing Guidelines purposes. The *Spry* court noted the substantial practical and legal differences between designating an offense as a crime of violence at the sentencing stage of a criminal case, rather than merely to permit the conduct of a pretrial detention hearing under the Bail Reform Act. Further, the *Spry* court noted that the Fourth Circuit's opinion in *Pelissero v. Thompson*, 170 F.3d 442 (4th Cir.1999), was "suggestive of a potential shift from the primary rationale underlying *Johnson*, namely that the danger inherent in the mere possession of a firearm is too highly attenuated to qualify the offense as a *per se* crime of violence." 170 F.3d at 722. In *Pelissero*, the Fourth Circuit upheld the Bureau of Prison's definition of a crime of violence to include possession of firearms "as a permissible and reasonable interpretation of the statute from which the Bureau derived its authority." 170 F.3d at 447.

Consistently, the Second Circuit in *Dillard* explained its rationale for employing a broader definition of "crime of violence" under the Bail Reform Act than under the Sentencing Guidelines as follows:

> In our view, the Sentencing Commission's determination that felon-in-possession is not a "crime of violence" under the Guidelines' "career offender" sentencing enhancement has little bearing on whether felon-in-possession is a "crime of violence" for purposes of the Bail Reform Act. While the Sentencing Commission has broad authority to interpret the Sentencing Guidelines, see 28 U.S.C. §§ 994, 995, it has no authority to interpret the Bail Reform Act. More importantly, the considerations at stake in the "career offender" sentencing provisions are vastly different from those affecting release or detention. *See Campbell*, 28 F.Supp.2d at 809 (W.D.N.Y.1998) (holding that "the term crime of violence' should have a broader scope [with respect to pretrial detention]

than it does with respect to sentencing issues," because "in the pretrial detention context," there is "greater risk to the community and less information before the court"). Thus, the Sentencing Commission's conclusion that felon-in-possession is not a "crime of violence" for purposes of the Guidelines' "career offender" provision has no influence on whether felon-in-possession is a "crime of violence" under the Bail Reform Act. Statutes and rules created in different contexts and for different purposes may have different meanings, notwithstanding the use of similar words.

214 F.3d at 103.

Thus, in the context of the charges brought in this case, the court adopts the approach taken by the Second Circuit in *Dillard* and by neighboring district courts in the Fourth Circuit in *Aiken, Spry* and *Chappelle.* Given the charges lodged against Powers, a detention hearing is not only appropriate under § 3142(f)(1)(A), it is a prudent and reasonable step necessary for the court to adequately assess the risk of flight and to consider and assure the safety of other persons and the community.

C. *The Unexplained Presence of Military Grade C–4 Plastic Explosives Is A Substantial Aggravating Factor Supporting Holding a Detention Hearing.*

■ Even were the Fourth Circuit to embrace the D.C. Circuit's approach in *Singleton* and reject *Dillard* and the district court rulings from other districts in this circuit, a detention hearing would be warranted in this case because this case is aggravated by the presence of military grade C–4 plastic explosives.

Several courts have noted that possession of certain categories of arms, namely unregistered firearms, represent a heightened danger beyond mere possession of a

firearm by a felon justifying categorical treatment as a crime of violence. For example, in *United States v. Lane,* 252 F.3d 905 (7th Cir.2001), Judge Posner held that a person charged simply as a mere felon in possession did not warrant a detention hearing, but that the possession of an inherently dangerous weapon such as an unregistered firearm would authorize such a hearing. "Some firearms, it is true—for example sawed-off shotguns—have no significant lawful use, and so their possession by felons may well constitute a crime of violence...." 252 F.3d at 907. Consistently, under "aggravating circumstances," the Fourth Circuit in *Johnson* permitted felon in possession convictions to be treated for Sentencing Guidelines purposes as crimes of violence. 953 F.2d at 115.

Other courts have held that possession of an unregistered firearm may trigger "crime of violence" consideration under the Sentencing Guidelines. *United States v. Dunn,* 946 F.2d 615, 621 (9th Cir.), *cert. denied,* 502 U.S. 950, 112 S.Ct. 401, 116 L.Ed.2d 350 (1991) (affirming appellant's conviction for felon in possession of unregistered firearm as crime of violence); *United States v. Hayes,* 7 F.3d 144, 145 (9th Cir.1993) (holding that convicted felon charged with possession of unregistered firearm presented "serious potential risk of injury to another" and was therefore a crime of violence).

Consistently, a number of district courts have held that a charge of possession of an unregistered firearm is a crime of violence for Bail Reform Act purposes. *See United States v. Sloan,* 820 F.Supp. 1133, 1141 (S.D.Ind.1993) ("possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d) also constitutes an independent crime of violence as defined in 18 U.S.C. § 3156(a)(4)."); *United States v. Spires,* 755 F.Supp. 890, 892 (C.D.Cal.1991) ("Congress believed these particular weapons, as

opposed to firearms in general, are extremely dangerous and serve virtually no purpose other than furtherance of illegal activity."); *United States v. Stratton*, 2001 WL 527442 (D.Ariz. April 24, 2001) ("The Court concludes that the crime of Possession of an Unregistered Firearm, to wit: a sawed-off shotgun, is also a 'crime of violence' for purposes of the Bail Reform Act."); *United States v. Dodge*, 846 F.Supp. 181, 184 (D.Conn.1994) ("The mere possession of such weapons [unregistered silencer and pipe bomb], therefore presents a 'substantial risk' of physical injury to others."). In this regard, several courts have held that possession of an unregistered firearm by a felon does not require an overt act in order to be deemed a crime of violence. *See, e.g., Dunn*, 946 F.2d at 621 ("Possession of an unregistered firearm does not require the use, attempted use, or threatened use of physical force as an element of the crime, as required for enhancement under § 16(a)."); *Dodge*, 846 F.Supp. at 183–184 ("Actual use of physical force against another is not an essential element of a 'crime of violence' under 18 U.S.C. 3156(a)(4)(B) . . . [but] inquiry must focus on whether the crimes alleged presented a 'substantial risk' of use of force during their pendency.").

Furthermore, possession of unregistered firearms as defined under 26 U.S.C. § 5845 by convicted felons in violation of 26 U.S.C. § 5861(d) demonstrates a "blatant disregard for law" and constitutes "presumptive evidence of unlawful violent intentions . . . [that] involves the substantial risk of violence necessary to label the possession a crime of violence under [18 U.S.C.] § 16(b)." *Dunn*, 946 F.2d at 621.

Powers, as a felon whose rights to possess firearms have been stripped as a result of his prior felony convictions, ought to be fully aware of the law prohibiting his ability to possess firearms. *See e.g., Unit-*

*ed States v. Johnson*, 704 F.Supp. 1398, 1400 (E.D.Mich.1988) ("felons in possession of firearms are acutely aware that such activity is illegal"), *citing United States v. Jones*, 651 F.Supp. 1309, 1310 (E.D.Mich.1987) (holding that felon in possession of firearms constitutes crime of violence based on felons' disregard for law, knowledge of illegal possession, propensity towards criminal activity with use of weapons in irresponsible manner, and necessity of legal intervention to halt possession). This is particularly true in light of the fact that Powers's past felony convictions were for possession of unregistered and illegal weapons.

## IV. CONCLUSION

For these reasons, the conduct of a detention hearing in this case is not only consistent with the terms of the Bail Reform Act, it is both prudent and warranted under the specific charges set forth in the indictment in this case to assure Powers' appearance at further proceedings and the safety of other persons and the community.