**UNITED STATES of America,
Plaintiff,**

v.

**Zedria HOLMES, Defendant.**

**No. 05–80093–CR.**

United States District Court,
S.D. Florida.

June 29, 2005.

Leon Watts, Federal Public Defender's Office, Fort Pierce, FL, for Defendant.

William T. Zloch, U.S. Attorney, West Palm Beach, FL, for Plaintiff.

### *PRETRIAL DETENTION ORDER*

HOPKINS, United States Magistrate Judge.

The Court, pursuant to 18 U.S.C. § 3141 *et seq.*, commonly known as the Bail Reform Act of 1984, hereby ORDERS that the Defendant, ZEDRIA HOLMES, be detained pursuant to the provisions of Section (f). Consistent with the Court's

oral ruling at the time of the detention hearing, the Court specifically finds that no condition or combination of conditions will reasonably assure the appearance of the Defendant as required. The Court further finds that no condition or combination of conditions will reasonably assure the safety of any other person and the community. Following are the Court's findings and conclusions.

### A.) The Government's Request and Argument for Detention of the Defendant.

Pursuant to the United States' (hereinafter, the "Government") request for pretrial detention, a hearing was held on May 25, 2005, in Fort Pierce, Florida. At the time of the hearing, the Defendant was charged by Complaint with one count of being a Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1), and, therefore, 18 U.S.C. § 924(a)(2) (setting forth the penalty for such possession). If convicted of this charge, Defendant faces a maximum sentence of ten (10) years in prison and a $250,000 fine. Since the hearing, by Grand Jury Indictment, the Government has added a second count of Possession of a Schedule I controlled substance, namely marijuana, in violation of 21 U.S.C. § 844.

At the hearing, the Government moved for detention based upon the Defendant's risk of flight. The Government, apparently in recognition of the Eleventh Circuit's recent opinion in *United States v. Johnson*, 399 F.3d 1297 (11th Cir.2005), limiting the reach of § 922(g) felon in possession violations as grounds for detention pending sentencing, did not directly seek the Defendant's detention on grounds of a risk of danger. Rather, the Government argued that once finding that the Defendant is a risk of flight, the Court may also conclude the Defendant constitutes a danger to other persons and the community and impose detention on the ground of "dangerous-

ness" as well. As will be explained below, under these particular circumstances the Court is persuaded that it may detain a defendant on the basis of dangerousness even if the good faith basis for holding the detention hearing is a ground under subsection (f)(2).

### B.) Procedures and Standards Governing Pretrial Detention as Established by 18 U.S.C. § 3141 *et seq.*, The Bail Reform Act of 1984.

Congress enacted the Bail Reform Act of 1984 (hereinafter, the "Act"), to modify the procedures and standards governing pretrial detention in the federal courts " 'hop[ing] to give the courts adequate authority to make release decisions ... that give appropriate recognition to the danger a person may pose to others if released.' " *United States v. Salerno*, 481 U.S. 739, 744, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (*quoting* S.Rep. No. 98–225, at 3, U.S.C.C.A.N.1984, pp. 3182, 3185). Nevertheless, according to the Supreme Court, "the Bail Reform Act carefully limits the circumstances under which detention may be sought to the most serious of crimes." *Id.* at 747, 107 S.Ct. 2095 (*citing* 18 U.S.C. § 3142(f) and specifically, those crimes under § 3142(f)(1)). The high court's recognition of the narrowness of the Act (intended by Congress to assure its constitutionality), is supported, it appears, by the Act's legislative history, which states with respect to the offenses identified in § 3142(f), that they "serve to limit the types of cases in which detention may be ordered prior to trial" and further, that the Act itself is directed toward "a small but identifiable group of particularly dangerous defendants." S.Rep. No. 225, at 20, and 6, U.S.C.C.A.N.1984, pp. 3203, 3188. Thus, the Act presumes that but for those persons falling within its narrowly drawn categories of potential pretrial detainees, charged individuals should be per-

mitted to be released, albeit in some situations with strict conditions. 18 U.S.C. § 3142(b). It achieves this end by closely delineating the procedures to be followed by a federal court in considering whether pretrial detention is appropriate in a particular instance. *Salerno,* 481 U.S. at 751–52, 107 S.Ct. 2095.

Still, the Act did change the landscape for considering release on bail. Specifically, it was intended to permit consideration of an arrestee's dangerousness in determining if the person should be released pending trial. Prior law did not permit a court to consider the risk to the community if an individual was released while awaiting trial unless the case involved a capital offense. S.Rep. No. 98–225, at 4–5, U.S.C.C.A.N.1984, p. 3178 ("Danger to the community and the protection of society are not to be considered as release factors under the current law ... The constraints of the ... [current law] ... fail to grant the courts the authority to impose conditions of release geared toward assuring community safety, or the authority to deny release to those defendants who pose an especially grave risk to the safety of the community."). Thus, this worked a fundamental change in the existing law so that dangerousness should be considered in determining what, if any, conditions of release are appropriate. 18 U.S.C. § 3142(g).

Although the Eleventh Circuit has not definitively spoken on this issue, it appears to be accepted among other courts that pursuant to the Act a detention hearing may be convened in only six situations. *United States v. Giordano,* 2005 WL 1224734 at *3 (S.D.Fla., May 11, 2005) (citing cases). This seems consistent with the legislative history which provides that "[s]ubsection (f) specifies the cases in which a detention hearing is to be held and delineates the procedures applicable in such a hearing. Paragraphs (1) and (2) of

subsection (f) describe the circumstances in which a pretrial detention hearing is required." S. Rep. 98–225, at 20, U.S.C.C.A.N.1984, p. 3203. Four instances are established in § 3142(f)(1), and two in § 3142(f)(2). Paraphrased, the six are limited to cases that involve:

(1) crimes of violence (§ 3142(f)(1)(A));

(2) maximum imprisonment for life or the death penalty (§ 3142(f)(1)(B));

(3) serious drug offenses for which the maximum sentence is ten years or more (§ 3142(f)(1)(C));

(4) specially identified recidivist offenders (§ 3142(f)(1)(D));

(5) a serious risk of flight by the charged person (§ 3142(f)(2)(A)); and

(6) a serious risk of obstruction of justice (§ 3142(f)(1)(B)).

18 U.S.C. §§ 3142(f)(1) and (f)(2). According to the Senate Report, "[s]ubsection (f)(1)(A) through (C) describes those offenses which comprise the greatest risk to community safety." S. Rep. 98–225, at 21, U.S.C.C.A.N.1984, p. 3204. With respect to § 3142(f)(1)(D), Congress expressed that "[t]his sort of criminal history is strongly indicative of a defendant's dangerousness, and thus is an adequate basis for convening a pretrial detention hearing." *Id.* No reference to dangerousness is made by the legislative history as to the two grounds set forth in subsection (f)(2). Rather, these "reflect the scope of current case law that recognizes the appropriateness of denial of release in such cases." *Id.*

The purpose of the detention hearing is to determine "whether any condition or combination of conditions set forth in ... [§ 3142(c) ] ... will reasonably assure the appearance of the person as required and *the safety of any other person and the community.*" 18 U.S.C. § 3142(f) (em-

phases added). According to Congress, "[t]he concept of defendant dangerousness is described throughout ... [the Bail Reform Act] ... by" use of the above emphasized language. S.Rep. No. 98–225, at 12.[1] Thus, wherever this language appears, it is logical to presume that Congress intended that a court specifically evaluate a defendant's dangerousness. As applicable in this instance, it appears in § 3142(g), dealing with a court's ultimate determination whether there are conditions of release that will reasonably insure the safety of the community.

With respect to whether detention is appropriate under the circumstances, according to the Supreme Court:

> The judicial officer is not given unbridled discretion in making the detention determination. Congress has specified the considerations relevant to that decision. These factors include the nature and seriousness of the charges, the substantiality of the Government's evidence against the arrestee, the arrestee's background and characteristics, and the nature and seriousness of the danger posed by the suspect's release. § 3142(g).

*Salerno,* 481 U.S. at 742–43, 107 S.Ct. 2095. This corresponds with the Senate Report, which states that § 3142(g) "enumerates the factors that are to be considered by the judicial officer in determining whether there are conditions of release that will reasonably assure the appearance of the person and the safety of any other person and the community." S. Rep. 98–225, at 23, U.S.C.C.A.N.1984, p. 3206. Indeed, the legislative history discloses that it was Congress' intent that "[i]n determining whether any form of conditional release will reasonably assure the appearance of the defendant and the safety of other persons and the community, the ju-

dicial officer *is required to consider* the factors set out in Section 3142(g)." *Id.* at 18, U.S.C.C.A.N.1984, p. 3201 (emphases added).

At the same time it directed courts to consider the factors in § 3142(g) when making a detention determination, Congress added new factors to those that had already been present under the existing bail statute. With respect to these added factors, Congress stated:

> These additional factors for the most part go to the issue of community safety, an issue which may not be considered in the pretrial release decision under the ... [existing bail statute]. The added factors include *not only a general consideration of the nature and seriousness of the danger posed by the person's release* but also the more specific factors of whether the offense charged is a crime of violence or involves a narcotic drug, whether the defendant has a history of drug or alcohol abuse, and whether he was on pretrial release, probation, parole, or another form of conditional release at the time of the instant offense.

*Id.* at 23, U.S.C.C.A.N.1984, p. 3206 (emphases added). In both adding specific, new factors directed at dangerousness and in directing courts to use those factors set forth in § 3142(g), including a general consideration of dangerousness per § 3142(g)(4), in reaching their detention decisions, it seems logical to conclude that Congress intended that the courts actually consider these factors in every instance when a detention hearing properly takes place pursuant to § 3142(f).

Circuits other than the Eleventh have considered the Act's treatment of "dangerousness." In *United States v. Himler,* 797

---

U.S.C. § 3142. *See* 18 U.S.C. §§ 3142(b), (c), (e), (f), and (g).

F.2d 156, 157 (3rd Cir.1986), the court was faced with determining "whether, under the ... [Act] ..., an accused taken into custody may be detained prior to trial based on danger to the community where the detention hearing was justified only by an alleged serious risk of flight pursuant to 18 U.S.C. § 3142(f)(2)(A)." In *Himler*, the defendant was only charged with producing false identification in an attempt to fraudulently obtain lost traveler's checks. *Id.* at 158. His criminal history involved similar charges, but he had no offenses falling within the categories set forth in § 3142(f)(1), and the Government did not allege that he was a serious risk for obstructing justice. *Id.* at 160. The Government did, however, assert that he was a risk of flight and sought his detention on that basis. *Id.* at 158. It also argued that the Act did not limit detention hearings to those cases set forth in § 3142(f), and that once a hearing was authorized evidence of danger to the community resulting from any form of recidivism could be relied upon to justify detention. *Id.* at 160.

The Third Circuit rejected the Government's arguments. In doing so, the Court quoted the Act's legislative history stating that its "drafters aimed toward a narrowly-drawn statute ... addressed to the danger from 'a small but identifiable group of particularly dangerous defendants'" and that "'the requisite circumstances for invoking a detention hearing in effect serve to limit the types of cases in which detention may be ordered prior to trial.'" *Id.* (*quoting* S. Rep. 98–225, at 6–7, 20, U.S.C.C.A.N.1984, pp. 3189, 3203). Based on these quotes, the court wrote:

[t]herefore, it is reasonable to interpret the statute as authorizing detention only upon proof of a likelihood of flight, a threatened obstruction of justice or a danger of recidivism in one or more of the crimes actually specified by the bail statute.

*Id.* As a result, the panel held that the statute does not "authorize[ ] pretrial detention upon proof of danger to the community other than from those offenses which will support a motion for detention" and, more specifically:

"Mr. Himler's case does not involve any of the offenses specified in subsection (f)(1), nor has there been any claim that he would attempt to obstruct justice or intimidate a witness or juror. Accordingly, we hold that the statute does not authorize the detention of the defendant based on danger to the community from the likelihood that he will if released commit another offense involving false identification. Any danger which he may present to the community may be considered only in setting conditions of release. He may be detained only if the record supports a finding that he presents a serious risk of flight."

*Id.* at 160.[2]

The First Circuit reached a similar conclusion with respect to the Act in *United States v. Ploof,* 851 F.2d 7 (1st Cir.1988). In *Ploof,* the defendant was indicted on a number of fraud crimes and charged by complaint with one narcotics possession crime. *Id.* at 8. The Government sought a hearing and Ploof's detention pursuant to § 3142(f)(1)(C), (f)(2)(A) and (f)(2)(B). *Id.* at 10. The lower court's decision was un-

---

2. Interestingly, after stating that the defendant's dangerousness might be considered in setting any conditions of release, and further noting that "[j]udicial officers making risk of flight determinations are guided by the factors set forth in Section 3142(g)" the court apparently failed to utilize (g)(4)'s consideration of the "nature and seriousness of the danger to any other person or the community" resulting from the defendant's release. *Id.* at 161.

clear on which of these bases it ordered detention, other than explaining that the defendant constituted a danger to the community. *Id.* at 12. It appears, however, that the appeals court, in reliance on the language quoted above from page 20 of the Senate Report, reasoned that "the structure of the statute and its legislative history make it clear that Congress did not intend to authorize preventive detention unless the judicial officer first finds that one of the § 3142(f) conditions for holding a detention hearing exists." *Id.* at 11. The panel further wrote:

"[i]n essence, we interpret the statute in the same manner as has the Third Circuit. That is, where detention is based on dangerousness grounds, it can be ordered only in cases involving one of the circumstances set forth in § 3142(f)(1).... Insofar as in the present case there is no longer any contention that any of the subsection (f)(1) conditions were met, pre-trial detention solely on the ground of dangerousness to another person or the community is not authorized."

*Id.* at 11–12.

Finally, in *United States v. Byrd,* 969 F.2d 106, 109–110 (5th Cir.1992), the Fifth Circuit reached a decision in general accord with the First and Third Circuits. That is, the Fifth Circuit agreed that detention hearings can only be held if one or more of the six grounds set forth in § 3142(f) is met. *Id.* at 109. The court further stated: "we find ourselves in agreement with the First and Third Circuits: a defendant's threat to the safety of other persons or to the community, stand-ing alone, will not justify pre-trial detention." *Id.* at 110. The *Byrd* opinion went on to state:

[i]n the case before us, the government requested a detention hearing and urged Dr. Byrd be detained on the grounds that he was a danger to the community. The government has not shown, however, that any one of the six listed circumstances that warrant pre-trial detention is present in this case.... Under the scheme of the Bail Reform Act, pre-trial detention requires a detention hearing. A detention hearing can only be held in a case that involves a crime or circumstance set out in § 3142(f) of the act. On the record before us, Dr. Byrd's case involves none of these crimes or circumstances. Therefore, as the fact that Dr. Byrd may pose a threat to the community is not, standing alone, a sufficient basis to detain him before conviction, his detention is not authorized by the Act.

*Id.* at 110–11.[3] Notwithstanding the Fifth Circuit's own language stating its agreement with the First and Third Circuits, this Court does not read the *Byrd* holding to be wholly consonant with those other Circuit's conclusions limiting detention of persons based on dangerousness only to those cases involving the circumstances set forth in § 3142(f)(1). Rather, the Fifth Circuit merely concluded that a detention hearing may not be held when none of the six bases in § 3142(f)(1) and (2) are present. *Id.*

Without examining it's contours, the Court of Appeals for the Eleventh Circuit, like these other circuits, has recognized

---

**3.** The Fifth Circuit noted, however, that had the government shown that no conditions of release could protect any other person or the community, it would be enough that Byrd's case involved one of the six circumstances set forth in § 3142(f). That is, the Circuit stated that such circumstance need not be the charged offense, only that a case such as Byrd's "involve" one of the six circumstances identified in the statute and that proof established a sufficient "nexus between the non-violent offense charged and *one or more of the six § 3142(f) factors." Id.* (emphases added). This language suggests that dangerousness may extend beyond the circumstances set forth in subsection (f)(1).

the existence of a dangerousness prong "emanat[ing] from section 3142(e)['s]" use of the language regarding consideration of the "safety of any other person and the community." *United States v. King,* 849 F.2d 485, 487 (11th Cir.1988). As stated, however, the court in *King* did not define whether dangerousness as a ground for detention was limited to detention sought under § 3142(f)(1), or whether it extended to those grounds identified in subsection (f)(2) as well. In *King,* the defendant was charged with several serious drug offenses raising the statutory presumptions under § 3142(e). *King,* 849 F.2d at 488. She also fell within § 3142(f)(1)(C). King was detained by the district court as a danger to the community and as a risk of flight. *Id.* at 487. She challenged her detention on both grounds.

The Eleventh Circuit rejected these challenges, finding that notwithstanding her introduction of evidence contradicting her dangerousness, she neither rebutted the presumption nor did she overcome the government's clear and convincing evidence of her danger to the community. *Id.* at 488. Further, the court found without deciding that even if the defendant succeeded in rebutting the presumption and government's evidence she also could have been detained based on a risk of flight, relying on the Seventh Circuit's opinion in *United States v. Portes,* 786 F.2d 758, 765 (7th Cir.1985), that a defendant may be detained if he is *either* a danger *or* a flight risk. *King,* at 488. In any event, the appeals court concluded the defendant should be detained on both bases.

In a recently issued opinion thoroughly addressing this issue, the Court in *United States v. Giordano,* 370 F.Supp.2d 1256, 1263–64 (S.D.Fla.2005), wrestled with whether detention on the basis of dangerousness was appropriate in a case involving only alleged economic harm to the community. The Court considered the cases cited above before concluding that detention on the basis of dangerousness was not permissible where the detention hearing was only brought pursuant to 18 U.S.C. § 3142(f)(2)(A).[4]

In *Giordano,* the defendant was charged with 35 counts of varying types of fraud. *Id.* at 1257–58. The government originally sought detention on both dangerousness (economic, in this case) and risk of flight grounds, but during the course of the detention proceedings withdrew its dangerousness claim, although the government maintained that dangerousness could be considered under the risk of flight analysis due to § 3142(g). *Id.* at 1260–61, and 1272 n. 1. None of the circumstances set out in § 3142(f)(1) applied to the case.

The Court in *Giordano* concluded that the Eleventh Circuit would follow the First and Third Circuits[5] in limiting detention based on a defendant's dangerousness to only those cases involving situations under § 3142(f)(1), and that a case involving possible future dangerousness due to economic harm alone does not fall within § 3142(f)(1). This Court understands the Court in *Giordano* concluded as it did

---

**4.** In *Giordano,* the Court also cited to *United States v. Friedman,* 837 F.2d 48, 49 (2d Cir. 1988). In *Friedman,* the Second Circuit accepted, without otherwise analyzing the issue, that "the Bail Reform Act does not permit detention on the basis of dangerousness in the absence of risk of flight, obstruction of justice, or an indictment for the offenses enumerated ... [in 18 U.S.C. § 3142(f)(1)]." This lan-

guage is subject to a more expansive reading than the holdings in *Himler* and *Ploof* discussed above.

**5.** The Court included the Second and Fifth Circuit cases mentioned above among those Circuits that have concluded dangerousness is only available as a basis for detention under § 3142(f)(1).

based on: (1) the absence of direct, controlling Eleventh Circuit law; (2) the existence of persuasive other circuit authority; (3) this Circuit's consistently narrow application of the Act consistent with its express provisions and legislative history; and (4) the fact that when amended in 2003, Congress, which is presumed to be aware of the state of the law, chose a narrow amendment to the Act, notwithstanding that the First and Third Circuits had already made their rulings limiting detention on dangerousness grounds to § 3142(f)(1). *Giordano*, at 1262–63, and 1272 nn. 2–5.[6] In addition to the factors identified by the Court in *Giordano*, others are applicable in this case.

First, as noted above, the Eleventh Circuit has held that a felon in possession in violation of 18 U.S.C. § 922(g) is not a crime of violence for purposes of 18 U.S.C. § 3142(f)(1). *Johnson*, 399 F.3d at 1302. This Circuit, like the District of Columbia Circuit Court of Appeals, has taken the categorical approach to this question. *See United States v. Singleton*, 182 F.3d 7, 12 (D.C.Cir.1999) (holding that felon in possession categorically is not a crime of violence under § 3142(f)). That is, a court should not examine the facts and circumstances of the felon's possession in determining whether it falls within 18 U.S.C. § 3156(a)(4) and, therefore, within § 3142(f)(1)(A). *Johnson*, 399 F.3d at 1301–02. Therefore, in light of *Johnson*, it

might follow that the Defendant cannot be detained as a danger to the community regardless of any finding made after considering the factors in subsection (g)(4).

In reaching its decision in *Johnson*, this Circuit recited much of *Singleton's* language. Although not specifically quoted in *Johnson*, the *Singleton* court in part explained its holding using the following language:

> The alternative, case-by-case, approach ... [to determining if a felon's possession of a firearm in a particular circumstance was a crime of violence] ... would collapse the distinction between the holding that triggers a detention hearing and the factors relevant at the hearing, which are enumerated in § 3142(g). Section 3142(f) entitles defendants to a prompt detention hearing, either immediately at the defendant's first appearance before a judicial officer, or within days thereafter. In recognition of the fact that defendants remain incarcerated between the time the court determines a hearing is necessary and the time the hearing occurs, *see* § 3142(f), Congress strictly limited the availability of continuances. *See id.* Accordingly, detention hearings normally occur before either side has had an opportunity to develop its evidentiary case, and the court's capacity to reach accurate factual determinations is limit-

---

6. As noted in *Giordano*, in 2003, Congress amended the law to deal with cases such as Dr. Byrd's involving certain crimes against children. *Giordano*, at 1261 n. 3. In 2004, Congress again amended subsections (e), (f)(1) and (g)(1), to add certain crimes of terrorism to those for which a rebuttable presumption of dangerousness arises. Intelligence Reform and Terrorism Prevention Act of 2004, Pub.L. No. 108–458, § 6952, 118 Stat. 3775 (Dec. 17, 2004). As recognized in *Giordano*, had Congress wished to expand further the situations under which the presumption of dangerousness would arise, or in

some other manner address the holdings of these courts, it could have done so when amending the act in these other ways. *See Giordano*, at 1261 n. 3 (*citing Conroy v. Aniskoff*, 507 U.S. 511, 516 & n. 10, 113 S.Ct. 1562, 123 L.Ed.2d 229 (1993) (holding that there is a presumption that Congress is aware of the relevant case law) *and Chisom v. Roemer*, 501 U.S. 380, 396, 111 S.Ct. 2354, 115 L.Ed.2d 348 (1991) (holding that if it was Congress' intent to deviate from an established rule, it would make its intent explicitly known in the statute)).

ed. The decision whether to hold a hearing occurs based on even less information than a decision to detain or release: a detention order is based on a hearing, while an order to hold a hearing is based on a proffer of what the hearing might establish. The single district court concluding that Congress contemplated a case-by-case approach overlooked this distinction, implying that reviewing the "nature" of an offense at the hearing could illuminate whether the hearing itself was appropriate. *See United States v. Epps*, 987 F.Supp. 22, 24–25 (D.D.C.1997). This two-tiered hearing-within-a-hearing procedure would protract detention analysis and erase the barrier that Congress constructed between sections 3142(f) and (g). Thus, because adopting a case-by-case approach would blur two distinct statutory inquiries and would give more weight to fact intensive analysis at an earlier stage of the case than Congress appears to have intended, we conclude that § 3142(f) contemplates that offenses eligible for pretrial detention hearings are ascertainable categorically by reference to their elements.

*Singleton,* 182 F.3d at 12 (as in original). In other words, "[c]ase specific facts are thus relevant at a detention hearing, *see* § 3142(g), but not when considering the government's motion under § 3142(f)(1)(A) to hold such a hearing." *Id.* (as in original).

It appears that adoption of the Government's position in this case could encroach on *Johnson's* "categorical" crime of violence approach. If accepted, it would seem that in every instance of a felon being charged with unlawful possession of a firearm and/or ammunition under § 922(g)(1), the Government could argue the case involved a serious risk of flight and, having made a sufficient showing on this basis, then ask a court to consider that the defendant had a weapon in his proximity or in proximity to other contraband, even if it does not appear that there is an independent (f)(1) basis for the Government to assert that the defendant is a danger to others or the community. Effectively, this might allow the Government to achieve a defendant's detention on the basis of the dangerousness of a violation of § 922(g) alone. Yet, *Johnson,* albeit in somewhat different circumstances, firmly moved away from the position that mere possession of a weapon by the felon is enough to establish a risk of danger so as to categorize possession as a crime of violence and thus fall within § 3142(f)(1)(A). *Johnson's* categorical approach to felon in possession violations counsels against permitting the wholescale evaluation of the facts and circumstances of the possession. To allow that in large measure might return pretrial detention to pre-*Johnson* days, thereby nullifying in great effect *Johnson's* holding.

Further, in having restricted or eliminated this one particular dangerousness ground for detention, others are still available. *Singleton* points out that excluding the felon in possession offense under § 922(g) does not prohibit the Government from seeking detention of such persons on other grounds, if applicable. *Singleton,* 182 F.3d at 15 (citing 18 U.S.C. § 3142(f)(1)(D), (f)(2)(A), or (f)(2)(B)). As a result, the Government in some instances would have available to it alternative grounds for seeking detention in the same case.

A conclusion that a defendant may not be detained on dangerousness grounds if the hearing is based on (f)(2) alone is not without arguments against it. First, *Singleton's* conclusion that the Government will have grounds other than dangerousness under § 3142(f)(1), for holding a detention hearing and thereby allow a court to evaluate whether an individual should

be detained may, in many cases involving strong indicators of dangerousness, not be true. In the case at bar, neither the charged offense (even the subsequent indictment) nor his criminal history appears to bring the Defendant within the reach of subsection (f)(1). Therefore, if dangerousness as a basis for detention is limited only to cases involving the categories found in § 3142(f)(1), this Defendant cannot be detained as a danger, but can only be detained as either a serious risk of flight or for a serious risk of obstruction of justice. *See* § 3142(f)(2).

Yet, the Defendant, who is a convicted felon, was in possession of a loaded firearm and ammunition at his residence, with probable cause to believe it to be a crack house where sales of crack cocaine were occurring on an ongoing basis and, at which, a second firearm was found. According to Congress, that a "defendant will continue to engage in drug trafficking constitutes a danger to the 'safety of any other person or the community.'" S.Rep. No. 98–225, at 13, U.S.C.C.A.N.1984, p. 3196. While this Defendant is not charged with these sales at this time, courts recognize that there is a close association between firearms and narcotics. *See, e.g., United States v. Thomas*, 242 F.3d 1028, 1032 and n. 5 (11th Cir.) (*citing United States v. Butcher*, 926 F.2d 811, 816 (9th Cir.1991); *United States v. Simon*, 767 F.2d 524, 527 (8th Cir.1985)), *cert. denied*, 533 U.S. 960, 121 S.Ct. 2616, 150 L.Ed.2d 770 (2001). Even if it is another resident of the house and not the Defendant who is a seller of drugs, the Defendant is a convicted felon, he possessed a weapon, and he was present at the location where the ongoing sales were occurring. There is a nexus between the Defendant, the weapon, and the sales, not to mention possession of his own marijuana in close proximity to his weapon.

Furthermore, if the *Singleton* court is correct and the two statutory inquiries are independent of one another—*i.e.,* (1) whether to hold a detention hearing, which is a categorical matter, and (2) whether, as a result of the hearing, evidence shows a defendant should be detained because he poses a serious danger to another person or the community under subsection (g)(4), which is a case-by-case approach—detention should be appropriate here because evaluation of the subsection (g) factors leads a court to that conclusion. Stated another way, since the ultimate detention determination is based on the factors in subsection (g) and is independent of deciding whether a hearing should be held, if those subsection (g) factors militate in favor of detention, especially that a defendant poses an unreasonable risk to any other person or the community under subsection (g)(4), should not a court be allowed to impose that detention? After all, just because an individual fails to come within the categories set forth in subsection (f)(1) does not necessarily exclude that person from being a danger to the community.[7]

In addition, if the analyses are separate as stated by *Singleton,* then a court should evaluate all of the factors in subsection (g) when making its detention determination, as a plain reading of subsection (g) would indicate. In reviewing the factors set forth in 18 U.S.C. § 3142(g)(1)-(4), some have more relevance to an arrestee's dangerousness and some to a risk of flight. For example, in § 3142(g)(3), family ties, employment, financial resources, and length of residence in the community, bear more directly on whether the individual is

---

**7.** Such a position would also seem to comport with Congress' action in adding not only new general dangerousness factors to subsection (g) but specific dangerousness factors under subsection (f)(1). *See* discussion, *supra,* and S.Rep. No. 98–225, at 23.

a risk for flight than they do on whether that person is a danger to the community or others. Factors such as criminal history, past conduct and the nature and seriousness of danger to others posed by a defendant's conditional release, in addition to the nature and circumstances of the charged offense, are closely linked to an individual's dangerousness. May a court consider all of the § 3142(g) factors in every case regardless of whether detention is sought under subsection (f)(1) or (f)(2), or should it limit itself to those most relevant to the Government's basis for detention? Implied in the First and Third Circuit's holdings discussed above, and in *Singleton* expressly, *id.* at 12, all of them should be considered in every case. Under *Himler* and *Ploof,* however, even if an individual poses a serious risk to other persons or the community, that finding alone will not permit detention unless one of the subsection (f)(1) bases for detention also exists.[8]

The First and Third Circuits' express holdings further create an anomalous situation for lower courts that will in the future confront the situation now before this Court. They do so because, if taken at their word, they prevent judicial officers from fully performing their role under subsection (e) when presiding over a detention hearing brought pursuant to subsection (f)(2). In relevant part, § 3142(e) provides:

> If *after a hearing pursuant to the provisions of subsection (f)* of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such

judicial officer shall order the detention of the person before trial.

. . .

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community *if the judicial officer finds that there is probable cause to believe that the person committed an offense* . . . under § 924(c) . . . [of Title 18 U.S.C.]. . . .

*Id.* (emphases added).

The first quoted paragraph makes no distinction between (f)(1) and (f)(2) as the basis for bringing the detention hearing. Arguably, then, it does not differentiate between these grounds in considering dangerousness. In other words, whichever good faith basis justifies the hearing, if the outcome of the hearing is the conclusion that detention is warranted, it requires that pretrial detention be imposed.

More importantly, the second quoted paragraph creates and describes the rebuttable presumption that applies in the case of certain offenses that are found by a judicial officer. The Act's plain and unambiguous language does not, however, require that those offenses be a charged offense for which the detention hearing was originally called. *United States v. Farguson*, 721 F.Supp. 128, 130 (N.D.Tex. 1989) (holding that a § 924(c) offense need not be a charged offense before finding § 3142(e)'s presumption applicable based upon facts presented at the detention hearing) (*citing United States v. Bess*, 678 F.Supp. 929, 934 (D.D.C.1988) (holding that the judicial officer may *sua sponte* invoke the statutory presumption where

---

**8.** In *Giordano*, the Court held that it could consider the risk of danger posed by the defendant under subsection (g)(4), but only in the context of the defendant's risk of flight, and dangerousness could not form an independent basis for detention. *Giordano*, at 1269–70.

the evidence adduced at the detention hearing establishes probable cause to believe one of the enumerated offenses in subsection (e) occurred even if it is not a charged offense forming the basis for bringing the detention hearing) ("The presumption identifies and classifies as presumably dangerous classes of defendants by the nature of their acts, not by reference to the particular complaint.")); *but see United States v. Chimurenga*, 760 F.2d 400, 405 (2nd Cir.1985) (holding that the Act's presumption only applies to charged offenses). The First and Third Circuits' holdings effectively negate the ability of a judicial officer to make this *sua sponte* determination in a case brought under (f)(2), and inquire into, and potentially detain on the basis of, a defendant's dangerousness. That position is contrary to Congress' statutory mandate (as expressed by the presumption in subsection (e)) that a defendant for whom there is probable cause to believe has committed one of the offenses enumerated in (e) is presumptively dangerous and may be detained on that basis.

At the Defendant's detention hearing, the Court inquired whether, under the facts presented, the Defendant might also qualify for possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c), in addition to the felon in possession charge. As noted above, such a conclusion, based upon probable cause, would trigger the rebuttable presumption under § 3142(e) as well as (f)(1)(B). It would certainly be anomalous for this Court to conclude that the presumption applies but that it was foreclosed from considering dangerousness because the detention hearing was originally brought on (f)(2) grounds.

This result, that a defendant may be detained as a danger to the community or others even where the hearing is brought based on (f)(2), does not expand the Act's scope. Rather, it coincides with Congress' intent (discussed earlier) in amending the statute so that dangerousness can be considered in appropriate cases. It also does not result in unfairness to defendants whose detention hearing may be based on (f)(2) grounds. The facts and circumstances surrounding the charges against a defendant generally are known prior to the detention hearing. Thus, a defendant and his counsel will be on notice of facts from which a judicial officer might conclude that, in addition to a charged offense, a violation of one of the enumerated offenses in subsection (e) has occurred, even if it is uncharged, and can prepare for that. Further, were a court to ignore facts leading it to a probable cause determination as to one of subsection (e)'s enumerated offenses, that court would be ignoring the statute's clear language. More salient, perhaps, even where there is no subsection (e) offense, the factors in subsection (g) fully incorporate Congress' dangerousness analysis in them. As a result, the Court is required to inquire about them and weigh them as it adjudicates the appropriateness of detention in a particular case. In either event, it is axiomatic that a court is obliged to follow controlling statutory language and give it full effect. That can only be done in these circumstances if the Court engages in the dangerousness analysis required by the Act.

In light of the foregoing discussion, this Court concludes that dangerousness as a grounds for detention is not excluded in cases involving detention hearings brought under (f)(2). This conclusion is based on a plain reading of the statute's unambiguous language and structure, the Act's legislative history, and the *Johnson* and *Singleton* courts' analyses. This Court is convinced that Congress intended that dangerousness be considered in all instances whether arising under subsection (f)(1) or (f)(2).

**C.) The Statutory Presumption that no Condition or Combination of Conditions will Reasonably Assure the Defendant's Appearance as Required and the Safety of the Community Applies.**

■ The Court concludes there is probable cause to believe that the Defendant violated 18 U.S.C. § 924(c). This conclusion is based on the following evidence: (1) the Defendant is a felon in illegal possession of a weapon; (2) the weapon was loaded and found near marijuana, (3) the weapon, a Glock semiautomatic pistol, is of a type commonly used in connection with narcotics crimes; (4) there was a second handgun found at the house (5) at the time of his arrest, the Defendant was present at a purported crack house; (6) the Defendant apparently resides in that same crack house; and (7) sales are taking place on an ongoing basis, with three controlled drug buys occurring shortly before execution of the search warrant.

Based on this evidence, the Court finds that there is probable cause to believe that the Defendant has committed a violation of 18 U.S.C. § 924(c). *See United States v. Suarez,* 313 F.3d 1287, 1292 (11th Cir. 2002) (*citing United States v. Ceballos–Torres,* 218 F.3d 409, 414–15 (5th Cir. 2000) (listing factors to be considered in concluding that a weapon is possessed in furtherance of a drug trafficking crime in violation of § 924(c))). As a result, the statutory presumption of risk of flight and dangerousness applies. Further, if convicted of a violation of that provision the Defendant faces a potential term of imprisonment up to life. As a result, the Defendant also comes within § 3142(f)(1)(B). As discussed below, the Court finds that the Defendant has not rebutted the presumption. The Court now turns to consideration of the basis for detention and analysis of the factors relevant thereto.

**D.) The Weight of the Evidence Against the Defendant and the Nature and Circumstances of the Offense Charged Pursuant to 18 U.S.C. § 3142(g)(1) and (2).**

As stated at the hearing, the Court finds that the weight of the evidence against the Defendant is substantial. The Government's proffer was as follows. On January 28, 2005, members of the West Palm Beach Police Department executed a search warrant on the residence located at 822 30th Street, West Palm Beach, Palm Beach County, Florida. The warrant was obtained as a result of prior controlled drug buys being conducted at the residence and complaints of citizens that the residence was a high traffic drug sale location.

The Defendant, ZEDRIA HOLMES, along with several other individuals, was present at the residence at the time of the search. There is some dispute as to where each of the individuals were located when first observed, although it appears that the Defendant was outside the door to what was later learned to be his bedroom. In any event, as related to the Defendant, the search disclosed the following items discovered in a northeast bedroom of the house: a Florida state issued driver's license in the name of Zedria Dove Holmes, a .40 caliber Glock pistol, loaded with 13 rounds of ammunition, and a bag of marijuana, later determined to contain 19.4 grams of marijuana. The photograph on the license matched the Defendant. The pistol was later tested and found to operate. The positions of the drugs and firearm within the bedroom are disputed. In a subsequent interview with West Palm Beach Police officials, the Defendant admitted that the marijuana and Glock pistol were his. Defendant further admitted that he had been previously convicted of several felonies under Florida law.

Although defense counsel established that no witness identified the Defendant as the seller of the drugs at the residence, or that this Defendant was even known to be at the house prior to execution of the search warrant, the Court considers the above proffered evidence substantial and finds probable cause exists to believe the Defendant committed the violation with which he is charged in the Criminal Complaint.[9]

### E.) The History and Characteristics of the Defendant Pursuant to 18 U.S.C. § 3142(g)(3).

According to the Pretrial Services Report, the Defendant was born on Feb. 21, 1978, in West Palm Beach, Florida. He is a lifelong resident of West Palm Beach and has lived at his present address his entire life. He does not have a passport and has never traveled outside the United States. He has completed the eleventh grade and does not have a GED.

The Defendant is single but presently engaged. He and his spouse-to-be have a two-week-old child. The Defendant's father and mother and his six siblings reside in West Palm Beach only one block from the Defendant's home.

The Defendant has been unemployed since 2003. For the two or three years prior to that he was employed by Spoor's Electric. Since 2003, he has been supported by his girlfriend and grandmother. The Defendant does not have any financial assets but does have hospital debts.

The Defendant does not appear to have any physical or mental health problems. He was shot in 2004 in the hand and back of the head, but there does not appear to be any lasting effects from these injuries. He uses marijuana on almost a daily basis

and has apparently done so for the last seven years.

Defendant's criminal history discloses that he has been convicted of the following offenses: (1) grand theft and grand theft auto in 1996; (2) selling cocaine in 1997; and (3) possession of less than 20 grams of marijuana in 2001. He also has three other drug possession charges. Importantly, the Defendant also has three arrests for failure to appear. Counsel for the Defense suggested these may have been the result of incarceration, but that is unclear at this time.

### F.) Whether There are Conditions of Release That Will Reasonably Assure the Appearance of the Defendant as Required and the Nature and Seriousness of the Danger to any Person or the Community That Would be Posed by the Defendant's Release Pursuant to 18 U.S.C. § 3142(g).

As noted earlier in this Order, the Government moved for detention based on the Defendant's serious risk of flight. The Court finds by a preponderance of the evidence that the Defendant is a serious risk of flight and should be detained on that basis. Such finding is based on the following factors: (1) the weight of the evidence against the Defendant is substantial; (2) the seriousness of the charge(s); (3) the Defendant's criminal history and its likely impact on sentencing; (4) the Defendant's presence at a location where ongoing drug sales were occurring; (5) the Defendant is a daily user of marijuana and that drug was found in his bedroom and in proximity to a weapon; (6) the Defendant is unemployed and has been since 2003;

---

9. As previously noted, the Court finds there is probable cause to believe Defendant also has

violated § 924(c).

and (7) the Defendant has a number of failures to appear.

The Court further finds by clear and convincing evidence that the Defendant is a danger to the community or others. The Court reaches this conclusion based upon the following factors: (1) the evidence is substantial; (2) the Defendant's criminal history; (3) the Defendant is a felon in illegal possession of a weapon; (4) the weapon was loaded and found near marijuana, (5) the weapon, a Glock semiautomatic pistol, is of a type commonly used in connection with narcotics crimes; (6) there was a second handgun found at the house (7) at the time of his arrest, the Defendant was present at a purported crack house; (8) the Defendant apparently resides in that same crack house; (9) sales are taking place on an ongoing basis; and (10) the Defendant did not rebut the statutory presumption arising from the Court's probable cause finding that he violated § 924(c).

This Court **ORDERS** that ZEDRIA HOLMES be detained on the basis of risk of flight and a danger to the community or other person.

**IT IS HEREBY ORDERED** that the Defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

The Court also directs that the Defendant be afforded reasonable opportunity for private consultation with counsel, and that, on order of a court of the United States, or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined deliver the Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.